

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION, | ) ) ) ) |
| Petitioner, | ) No. 11 C 4426 ) |
| v. | ) Judge Ruben Castillo ) ) |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

The Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Central Region ("BLET") petitions this Court to enforce an award of the National Railroad Adjustment Board ("Board" or "NRAB") against Union Pacific Railroad Company ("Union Pacific") pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA" or "the Act"). (R. 1, Pet.) Presently before the Court is Union Pacific's motion to dismiss BLET's petition pursuant to Federal Rule of Civil Procedure 12(b)(1). (R. 8, Resp.'s Mot. Dismiss.) For the reasons stated below, the motion is denied.

## RELEVANT FACTS

BLET is a labor organization, national in scope, that represents locomotive engineers and trainmen. (R. 1, Pet. ¶ 5.) Union Pacific is a railroad carrier engaged in the transportation of persons and property. (*Id.* ¶ 6.) Engineer Bryan L. South was previously employed with Union Pacific. (*Id.* ¶ 9.) This dispute has a long history dating back to 2001, when Union Pacific

1

dismissed South from employment. (*Id.*) The BLET grieved his dismissal with Union Pacific "on the property," and the matter then progressed to the First Division of the Board. (*Id.* ¶ 10.) In Award No. 26090, the Board dismissed South's claim on the basis that it lacked jurisdiction to hear the matter because the record did not include evidence that the BLET and Union Pacific had conferenced the matter as required by the Act. (*Id.* ¶ 11.) The BLET petitioned a federal district court to review the Board's award, but the district court dismissed the petition on May 15, 2006. *Bhd. of Loco. Eng'rs and Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R.R.*, 432 F. Supp. 2d 768, 777 (N.D. Ill. 2006). On appeal, the Seventh Circuit reversed, holding that the Board's decision to dismiss violated the BLET's due process rights. *Bhd. of Loco. Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R.R.*, 522 F.3d 746 (7th Cir. 2008). On December 8, 2009, the Supreme Court unanimously affirmed the Seventh Circuit's opinion. *Bhd. of Loco. Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R.R.*, 130 S.Ct. 584 (2009). On February 1, 2010, the district court entered judgement remanding the matter back to the Board for "such further action as may be appropriate and consistent with the decision of the United States Supreme Court rendered on December 8, 2009." (R. 1, Pet. ¶ 17.)

On August 25, 2010, the Board took "such further action." (*Id.* ¶ 18.) A panel of the First Division of the Board issued Award No. 27134 ("the Award") ordering Union Pacific to reinstate South predicated on South's "successful return to service processing as per [Union Pacific's] usual and customary procedures." (R. 1, Pet., Ex. A. at 2.) The Board also ordered that South "receive pay for time lost for the period from the 31st first [sic] day after his removal from service until the date of the initial First Division Hearing in this matter on March 18, 2004."

(*Id.*) Finally, the Board ordered Union Pacific to "make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties." (*Id.*)

Union Pacific did not comply with the Award within the 30 days prescribed by the Board. (R. 1, Pet. ¶¶ 19-21.) On October 26, 2010, 62 days after the Award was entered, Alan L. Weed, Director of Labor Relations for Union Pacific, sent an e-mail to Charles Rightnowar, General Chairman of BLET, asking whether Rightnowar had "a good address for BL South[.]" (R. 11, Weed Decl. ¶ 14, Ex. 3.) On November 30, 2010, Weed e-mailed Rightnowar asking whether there were any updates on South's whereabouts and informing Rightnowar that Union Pacific could not find South." (*Id.* ¶ 17, Ex. 4.)

On December 21, 2010, four months after the Award was entered, Dan Witthaus, Superintendent of the St. Louis Service Unit, sent South a certified letter at his last known address, even though Union Pacific knew the address for South was not correct, advising him to return to work. (*Id.* ¶ 18; R. 1, Pet. ¶ 21; R. 15, BLET's Opp'n. at 3.) The letter was returned to Union Pacific as undeliverable. (R. 11, Weed Decl. ¶ 18.) A copy of the letter was also sent to Rightnowar. (*Id.*) South no longer resides at that address and never received the letter. (R. 1, Pet. ¶ 22.) Witthaus did not receive a response to this letter from either South or Rightnowar. (R. 11, Weed Decl. ¶ 18.) On January 13, 2011, Witthaus "sent a second certified letter to South at his last known address advising him that, due to his failure to return to service his employment had been terminated pursuant to the Laying Off and Leave of Absence Agreement." (*Id.* ¶ 19; R. 1, Pet. ¶ 23, Ex. C.) Again, a copy of the letter was also sent to Rightnowar. (R. 11, Weed Decl. ¶ 19.)

On April 6, 2011, South contacted a BLET Local Chairman after "hearing from a fellow

3

locomotive engineer that his case was resolved" and provided his current telephone number which was forwarded to Rightnowar. (R. 15-1, Rightnowar Decl. ¶ 18, Ex. C.) The next day, on April 7, 2011, Rightnowar contacted Weed and provided him with a current address for South. (*Id.* ¶ 19, Ex. D.) Weed responded that he was "[n]ot sure how [it was] relevant at this point." (*Id.*)

## PROCEDURAL HISTORY

On June 30, 2011, BLET filed a petition to enforce Award No. 27134 with this Court. (R. 1, Pet.) In its petition, BLET requests that the Court order "Union Pacific to comply with the Award by reinstating [South] and paying him for 'time lost for the period from the 31st day after his removal from service until the date of the initial First Division Hearing in this matter on March 18, 2004." (*Id.* ¶ 29.) BLET further requests that this Court "[a]llow plaintiff its reasonable attorney's fees to be taxed as costs as provided in 45 U.S.C. § 153 First (p); and issue such other relief as may be appropriate in law or equity." (*Id.*)

Thereafter, on July 21, 2011, Union Pacific filed a motion to dismiss BLET's petition pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. (R. 8, Resp.'s Mot.) In support of its motion, Union Pacific argues that "the parties' disagreement over whether Union Pacific has complied with Award No. 27134 requires interpretation or application of the parties' collective bargaining agreements, and is therefore a 'minor dispute'" over which this Court lacks jurisdiction. (R. 10, Resp.'s Mem. at 8.) Alternatively, Union Pacific argues that the dispute involves an interpretation of the Award and it must therefore be remanded to the Board. (*Id.*)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) asks the court to dismiss an action over

4

which it allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof. *See Glaser v. Wound Care, Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Finally, when considering a motion to dismiss under Rule 12(b)(1), a court may look beyond the allegations of the complaint and may consider other submitted evidence. *Johnson v. Apna Ghar, Inc.*, 330 F.3d 990, 1001 (7th Cir. 2003); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

## ANALYSIS

BLET seeks to enforce the Board's award pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq*. In enacting the RLA, Congress sought to "promote stability in labor-management relations in [the railroad] industry by providing effective and efficient remedies for the resolution of railroad-employee disputes." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 94 (1978); *see also Union Pac. R.R. v. Bhd. of Loco. Eng'rs*, 130 S.Ct. 584, 591 (2009); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994); 45 U.S.C. § 151a. "The Act instructs labor and industry 'to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes . . . in order to avoid any interruption to commerce or to the operation of any carrier[.]" *Union Pac. R.R.*, 130 S.Ct. at 591 (quoting 45 U.S.C. § 152 First). To accomplish this objective, the RLA provides a framework for the mandatory arbitration of 'minor' disputes. *Id.* Arbitration occurs before the NRAB, which is divided into four Divisions. *Id.* "Minor" disputes are primarily "grievances arising from the application of collective bargaining agreements to particular situations." *Id; see also Hawaiian Airlines, Inc.*,

512 U.S. at 253 (explaining that minor disputes "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'") (quoting *Trainmen v. Chi. R. & I.R.*, 353 U.S. 30 (1957)).

The RLA instructs that NRAB awards are "final and binding upon both parties to the dispute." 45 U.S.C. § 153 First (m). Nonetheless, the RLA contemplates that carriers will not always comply with the Board's awards. Accordingly, the RLA provides winning parties with an enforcement mechanism in the event a losing party fails to comply with the terms of the award. 45 U.S.C. § 153 First (p). Pursuant to 45 U.S.C. § 153 First (p), "[i]f a carrier does not comply with [a Board] order . . . within the time limit in such order, the petitioner . . . may file in the District Court . . . a petition setting forth briefly the causes for which he claims relief, and the [Board's] order." District courts are empowered by the RLA to enforce or set aside the Board's order. 45 U.S.C. § 153 First (p).

Despite this grant of power, it has long been recognized that district courts "do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board [and t]hey may not substitute their judgments for those of the Board divisions." *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970). Along these lines, "the range of judicial review in enforcement cases is among the narrowest known to the law." *Diamond*, 421 F.2d at 233. Board awards may only be set aside on three narrow grounds: (1) the Board's failure to comply with the requirements of the RLA; (2) the Board's failure to conform or confine the award to matters within the scope of the Board's jurisdiction; or (3) fraud or corruption by a member of the Board making the award. 45 U.S.C. § 153 First (m); *Union Pac. R.R.*, 439 U.S. at 93 (agreeing with district court that where employee "failed to demonstrate the existence of any

of the grounds for review set forth in § 153 First (q)" Adjustment Board's decision should not be set aside); *Diamond*, 421 F.2d at 233 (affirming district court's order enforcing Board's order to reinstate petitioner where award was not without foundation in reason or fact and therefore could not be equated with an award that exceeds the Board's jurisdiction); The Railway Labor Act, 410 (Michael E. Abram et al. eds., 2nd ed. 2005).

Where "an arbitration award is too ambiguous to be enforced, as 'when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation,' the district court should if possible send the matter back to the original arbitration panel for clarification rather than put the parties to the expense of starting from scratch with a new arbitration by a new panel." *Bhd. of Loco. Eng'rs and Trainmen v. Union Pac. R.R.*, 500 F.3d 591, 592 (7th Cir. 2007) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000)). That said, ambiguities manufactured by a party seeking to use them to invalidate an award are not a ground for a court's refusal to enforce an award. *Bhd. of Loco. Eng'rs and Trainmen*, 500 F.3d at 593 (7th Cir. 2007).

Additionally, courts have recognized that "[t]he Board, in fashioning relief, often sets out a general principle of relief and lets the parties, or the court if necessary, apply it, filling in the details. An award is not unenforceable merely because it requires such application." *Bhd. Ry. Carmen of U.S. and Can., AFL-CIO, CLC v. Belt Ry. Co. of Chi.*, 658 F. Supp. 136, 139 (N.D. Ill. 1987). Reinstatement awards in particular impose "an obligation on the employer of good faith compliance with the intent and spirit of the award, rather than grudging attempts to limit relief to a minimum." *Id.*

Here, BLET filed a petition to enforce Award No. 27134 that issued on August 25, 2010.

7

The Award was issued to resolve what is properly classified as a "minor" dispute between the parties regarding South's 2001 termination. (R. 15, BLET's Opp'n. at 1.) The Award required the reinstatement of South "predicated upon [his] successful return to service processing per [Union Pacific's] usual and customary procedures." (R. 1, Pet., Ex. A at 2.) The Award also ordered Union Pacific to pay South "for time lost for the period from the 31st . . . day after his removal from service until . . . March 18, 2004." (*Id.*) Union Pacific was "ordered to make the Award effective on or before 30 days following the postmark date the Award [was] transmitted to the parties." (*Id.*) Union Pacific did not attempt to reinstate South or to pay him for time lost within the 30-day time frame required by the Award. The BLET asserts that to date, Union Pacific has neither effectively reinstated South or paid him for time lost. (R. 1, Pet. ¶¶ 19-20).

In its motion to dismiss, Union Pacific argues that the BLET's petition should be dismissed because the dispute is properly characterized as a separate dispute over whether South complied with the parties' usual and customary procedures, and is therefore a minor dispute subject to arbitration. (R. 10, Resp.'s Mem. at 12; R. 16, Resp.'s Reply at 3.) Alternatively, Union Pacific argues that the parties' dispute should be remanded to the NRAB for further proceedings. (R. 10, Resp.'s Mem. at 14.)

## I.  Whether the parties' dispute is a new and separate dispute

Union Pacific has styled this dispute as one over which the Court lacks jurisdiction because the dispute is a new and separate dispute concerning the interpretation of the parties' agreements as to the "usual and customary procedures" for returning to service. (R. 10, Resp.'s Mem. at 2, 14.) According to Union Pacific, South was terminated in January 2011 for a second time because "South (and the BLET) failed to comply with [the parties'] 'usual and customary

procedures.'" (*Id.* at 2.) According to Union Pacific, these "usual and customary procedures" required South to maintain updated contact information with Union Pacific and "to return to work within fifteen days of receiving a notice sent to his . . . last known address." (R. 16, Resp.'s Reply at 3.) In essence, Union Pacific argues that the Court lacks jurisdiction to address what it frames as the issue here–the propriety of South's second termination. In support of its argument, Union Pacific points to the body of case law under the RLA that distinguishes between "major" and "minor" disputes.

This action was brought by the BLET to enforce the Award, not to challenge the "second dismissal" of South. Rather than ask the Court to set aside the Award on the basis of any of the three grounds articulated in the RLA, however, Union Pacific instead attempts to circumvent the RLA's enforcement mechanism by arguing that the BLET's enforcement action is actually "a new dispute over the nature of the parties' 'usual and customary procedures' regarding reinstatement." (R. 16, Resp.'s Reply at 4 fn.2.)

The first fundamental flaw in Union Pacific's argument is that it overlooks simple legal principles that are applicable here. When a carrier fails to comply with the terms of an NRAB award by the deadline set forth in the award, a cause of action to enforce the award accrues to the party in whose benefit the award was made. 45 U.S.C. § 153 First (p); *Transp. Commc'ns. Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 905 (7th Cir. 1994) ("[Railroad's] failure to comply with the Board's award by that date triggered the Union's right to enforce its award in the district court."); *see also Bhd. of Loco. Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp.*, 522 F.3d 1190, 1194 (11th Cir. 2008) ("the carrier's failure to comply within the time limit established by the award [is] the triggering event for an enforcement

9

action"). Accordingly, once Union Pacific failed to comply with the terms of the Award, the BLET had every right to bring an action to enforce Award No. 27134.

The second fundamental problem with Union Pacific's attempted recharacterization of this dispute is that it finds no support in the facts. Nowhere in its submissions does Union Pacific allege that it attempted to reinstate South and pay him for time lost within the 30-day time frame ordered by the Board in Award No. 27134. Union Pacific simply glosses over this detail. (R. 11, Weed Decl. ¶ 13.) Union Pacific waited 62 days after the Award issued to reach out to the BLET for assistance in locating South's current address. Any attempt by Union Pacific to reinstate South undisputably occurred after the deadline for complying with the Award had lapsed. Additionally, Union Pacific's attempt to reinstate South is questionable as it mailed the notice of reinstatement to an address it knew was incorrect. South's "second termination," and the grounds for this termination are therefore not a new and separate dispute as to whether Union Pacific was complying with its usual and customary procedures. Despite Union Pacific's best attempts to characterize the issue as whether South failed to comply with the usual and customary procedures outlined in the Award, all the BLET brings before this Court in its enforcement proceeding is an action to enforce Award No. 27134. *See Bhd. Ry. Carmen of U.S.*, 658 F. Supp. at 138. Union Pacific cannot avoid enforcement of the Award by purportedly attempting to reinstate South, after the time for compliance with the Award had lapsed, and then dismissing South. Accordingly, the Court has jurisdiction to enforce the Award. *See United Transp. Union v. Ill. Cent. R.R.*, No. 8-4001, 2010 WL 996463, at *5 (N.D. Ill. Mar. 16, 2010).

Seeking to avoid this result, Union Pacific argues that other courts have found that post-award conduct is a separate dispute. (R. 16, Resp.'s Reply at 4-5.) Union Pacific relies only on

10

*United Transportation Union v. Terminal Railroad Association of St. Louis*, which is factually distinguishable from this case. There, the sole issue before the Board was whether the carrier could invoke an estoppel argument and thereby deny the claimant his right to return to work. No. 99-393, 2000 U.S. Dist. LEXIS 19510, at *2 (S.D. Ill. Sept. 14, 2000). The Board did not determine whether the claimant should be returned to work. *Id.* at *3. In asserting that the carrier had failed to comply with the award because the claimant had not been returned to work, the Union's enforcement action sought relief beyond the scope of the NRAB award. *Id.* at *4-5. Accordingly, the court appropriately characterized the dispute as a minor dispute and found that it was therefore without jurisdiction to decide the issue. *Id.* at *7. Unlike petitioners in *United Transportation Union*, however, the BLET is not seeking relief that goes beyond the scope of Award No. 27134.

Additionally, other courts faced with similar arguments made by carriers have concluded that they have subject matter jurisdiction over the enforcement proceeding. For example, in *United Transportation Union v. Illinois Central Railroad*, a case with similar factual circumstances, the court rejected the railroad's argument that the court lacked jurisdiction to address an employee's "second termination." 2010 WL 996463 at *5. There, an employee was terminated in December 2005, and in February 2006, his union brought a claim seeking reinstatement and back pay that progressed to arbitration before the Public Law Board ("PLB"). *Id.* at *1. The PLB issued a draft opinion reinstating petitioner. *Id.* The railroad construed the draft as a final award and sent a letter to petitioner in August 2007 demanding that he return to work in 15 days. *Id.* Petitioner could not return to work because he was in jail at the time. *Id.* The draft award became a final award in November 2007, and in December 2007, the railroad

informed petitioner that he was no longer an employee because he had failed to return to work within 15 days of receiving the August 2007 letter. *Id.* at *2. The railroad argued, in part, that the court lacked jurisdiction to address petitioner's "second termination" because the second termination was a separate employment dispute that must first be addressed in arbitration. *Id.* at *5. The court rejected this argument reasoning that "the assessment of the propriety of the supposed second termination by the [railroad] in August 2007, involves an assessment of the very same facts relating to the Draft and eventually the legally binding Award 31 that are at issue in Petitioner's petition to enforce Award 31." *Id.* The court further reasoned that the railroad could not "avoid enforcement of Award 31 merely by purportedly dismissing [petitioner] anew." *Id.* Accordingly, the court held that it was not without jurisdiction to enforce the award and order petitioner's reinstatement. *Id.*

Finally, the Court is unpersuaded by Union Pacific's argument because characterizing the BLET's enforcement action as a minor dispute and dismissing BLET's enforcement action would essentially eviscerate Award No. 27134. Adopting Union Pacific's argument would reward Union Pacific first for failing to comply with the Award within the 30-day time frame provided and second for attempting to comply with the Award in bad faith only after the time for compliance had lapsed. Because Union Pacific's attempts to reframe the dispute find no support in the facts or in law, the Court finds that it has jurisdiction and that the current dispute is not a new and separate dispute.

## II. Whether the Award is ambiguous

Alternatively, Union Pacific argues that the parties' dispute is properly classified as a dispute as to the interpretation of the Award and that it should therefore be remanded to the

12

NRAB for further proceedings pursuant to 45 U.S.C. § 153 First (m). "If an arbitration award is too ambiguous to be enforced, as 'when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation,'" the district court should remand "the matter back to the original arbitration panel for clarification[.]" *Bhd. of Loco. Eng'rs and Trainmen*, 500 F.3d at 592 (7th Cir. 2007) (internal citation omitted). An award does not, however, "become so vague and indefinite as to be unenforceable simply because a party can argue that a portion of it may be unclear or ambiguous." *Bhd. Ry. Carmen of U.S.*, 658 F. Supp. at 139. Additionally, a Board award is not unenforceable merely because in fashioning relief, the award has set out "a general principle of relief" that requires the parties to fill out the details. *Id.*

Here, Award No. 27134 ordered Union Pacific to reinstate South "to service predicated upon [South's] successful return to service processing as per [Union Pacific's] usual and customary procedures." (R. 1, Pet., Ex. A at 2.) The Award also ordered that South "receive pay for time lost" and that the Award be made "effective on or before 30 days following the postmark date the Award is transmitted to the parties." (*Id.*) BLET argues that the Board's award is not ambiguous and that Union Pacific has never effectively reinstated South. (R. 15, BLET's Opp'n. at 6-7). BLET asserts that the Award is clear in ordering "(1) that Union Pacific reinstate South, (2) that he comply with its return to service procedures, (3) that he be paid for certain time lost, and (4) that Union Pacific comply within 30 days." (*Id.* at 6.) With respect to reinstatement, BLET contends that "[t]he usual and customary procedures for return to service are related to ensuring that an engineer is fit to return to work and safely operate a locomotive." (R. 15-1, Rightnowar Decl. ¶ 7.) These procedures include three things: (1) a rules examination, (2) a recertification with the Federal Railroad Administration, and (3) a physical examination

13

including a drug test." (*Id.*)

According to Union Pacific, however, its "usual and customary" return to service procedures required South to maintain an updated address with Union Pacific, but he failed to do so. In support, Weed explains that "[e]mployees working under the Union Pacific and the System Agreement have an obligation to keep the [Union Pacific] informed of a current address." (R. 11, Weed Decl. ¶ 8.) Weed further states that "[t]his is an implied term of the parties' agreements", and that it is "reflected in the Superintendent Bulletins, provided to all engineers at the St. Louis Terminal[.]" (*Id.*) Weed's testimony, however, is directly contradicted by an August 6, 2010 letter authored by him informing Rightnowar that once an employee "has been dismissed from service with [Union Pacific] . . . he is no longer an employee." (R. 15-1, Rightnowar Decl., Ex. A.) In this letter, Weed also clarifies that "it has been the longstanding practice of [Union Pacific] to remove former employees' access to all computer systems when the employment relationship ceases. Accordingly, whenever an employee is dismissed under a disciplinary action they also lose computer access, even though the case may be on appeal." (*Id.*) Under these facts, it appears that the requirement to maintain an updated address only applies to current employees. Additionally, terminated employees who contest their dismissals are not considered employees by Union Pacific and are not provided access to Union Pacific's computer systems in order to maintain updated contact information.

The Court finds that Union Pacific's argument that South had a duty to provide updated contact information for over a decade since his dismissal is not convincing. Having failed to comply with the Award by the deadline specified, Union Pacific now asks the Court to ignore the terms of the Award and to remand the dispute back to the NRAB due to an ambiguity that

14

appears to have been manufactured. As the Seventh Circuit cautioned in *Brotherhood of Locomotive Engineers and Trainmen*, ambiguities manufactured by a party after an award has issued are not a ground for refusing to enforce them. 500 F.3d at 593 (reversing district court's dismissal of suit on the basis that award was ambiguous). If Union Pacific was unclear about how to interpret the Award, it should have sought an interpretation of the Award from the Board per the mechanisms provided in the RLA. *See* 45 U.S.C. § 153 First (m). Instead, Union Pacific first failed to comply with the Award, then mailed a reinstatement letter to an address that it knew was not correct, and then terminated South a second time all of which indicates bad faith on the part of Union Pacific. A remand to the Board at this point would essentially eviscerate the Award, as the parties would return to the NRAB to argue about the propriety of South's second termination, essentially giving Union Pacific a second bite at the apple. *See Bhd. of Loco. Eng'rs and Trainmen*, 500 F.3d at 592. The Court is not persuaded by Union Pacific's fabricated ambiguities and finds that the Award is not so vague as to be unenforceable.

## CONCLUSION

For the foregoing reasons, Union Pacific's motion to dismiss (R. 8) is DENIED. Since this Court has rejected Union Pacific's technical, bad faith defenses all that remains is enforcement of the NRAB Award and an award of attorneys' fees to Petitioner. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle the remaining issues in this lawsuit. The parties shall appear for a status on November 22, 2011, at 11:00 A.M., to set a firm litigation schedule, unless this Court is informed that this lawsuit has been settled.

Entered: *[signature]*
Judge Ruben Castillo
United States District Court

**Dated:** November 7, 2011